**Dr. Jorge CHIRIBOGA, Plaintiff,**

**v.**

**Dr. Manuel SALDANA, et al.,
Defendants.**

**Civ. No. 86–0702 (JP).**

United States District Court,
D. Puerto Rico.

April 29, 1987.

Jesús Hernández Sánchez, Santurce, P.R., for plaintiff.

Rubén T. Nigaglioni, Ledesma, Palou & Miranda, Hato Rey, P.R., Juan Moldés, U.P.R. Cent. Admin. Office of Legal Affairs, San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action arising under 42 U.S.C. § 1983 for damages and injunctive relief in which the plaintiff alleges that defendants deprived him under color of state law of his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff asserts that he was dismissed from positions he held at the Medical Science Campus at the University of Puerto Rico in violation of due process protection and in violation of his right to the free political affiliation. At a pretrial conference, the parties agreed that the preliminary and permanent injunction will be consolidated and tried as one, that the qualified immunity defense will be heard with the main case, and that the jury will decide the damages issue, and the court will decide the injunction. A jury trial was held on January 12–14, 1987. After careful consideration of the testimony and the documents, and after due deliberation, the Court now makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. Plaintiff, Dr. Jorge Chiriboga, a 65–year-old medical doctor, has been associated with the University of Puerto Rico (UPR) in various capacities since 1965. At the time relevant to his complaint, plaintiff was serving as Director of the Center of Biomedical and Environmental Sciences, an administrative position, and as an Investigator with the Medical Sciences Campus of the UPR, a research/academic position. The salary of an investigator is $30,600.00 per year. Plaintiff is and was at the time of the acts giving rise to this complaint, a member of the New Progressive Party (NPP).

2. Defendant Dr. José M. Saldaña is the present Chancellor of the Medical Sciences Campus of the UPR. Defendant Fernando Agrait is the present President of the UPR. Both defendants presently are and were, at all times relevant to the facts giving rise to the complaint, members of the Popular Democratic Party (PDP).

3. Dr. Chiriboga was first employed with the UPR in an administrative division of the Nuclear Center. Sometime thereafter he became a Senior Scientist II. On April 14, 1976, Dr. Arturo Morales Carrión, then the President of the UPR, informed plaintiff that, as a result of a reduction of the federal funding for the Puerto Rico Nuclear Center, his position as Senior Scientist II would be eliminated on July 1, 1977. At the date of this termination, the University had not granted tenure to plaintiff in this position, nor did he qualify for tenure under University rules and regulations.

4. After the termination of his full-time employment with the UPR, Dr. Chiriboga became a full-time employee of the Department of Health of the Commonwealth of Puerto Rico, in the position of Assistant Secretary of Environmental Health. He continued as a full-time employee of the Department of Health until July, 1981. After his termination as a full-time employee with the UPR in July, 1977 through July 31, 1980, plaintiff rendered services to the UPR on a part-time basis under several successive personal or special services contracts.

5. Effective August 1, 1980, Dr. Norman Maldonado, the Chancellor of the Medical Sciences Campus of the UPR, appointed plaintiff to the position of Director of the Center of Environmental Sciences (Director), an administrative non-academic position created by the Chancellor and within the Chancellor's office. He was selected without going through a competition process. Plaintiff reported directly to the Chancellor, was under the latter's direct supervision and his office had a direct and daily contact with the office of the Chancellor. Plaintiff's appointment as Director was continued under temporary personal service contracts until October 21, 1985. Upon the request of Dr. Saldaña, Dr. Chiriboga handed a written letter of resignation as Director of the Center for Biomedical and Environmental Sciences on October 18, 1985, which was accepted by Dr. Saldaña by letter dated October 21, 1985. He was not given a pre-termination hearing.

6. The Administrative Board of the Medical Sciences Campus, pursuant to Certification Number 22 (Series 1983–84), effective July 19, 1983, appointed plaintiff to a conditional probationary appointment as Professor in the School of Medicine. This was his first academic appointment since he began employed with the UPR on a full time basis since August 1, 1980. Beginning in 1983, plaintiff was simultaneously performing two separate positions with the UPR, an administrative and an academic post. At the time of this academic appointment, Dr. Chiriboga was performing research work (fifty percent of the time) in the pesticide program, a federaly funded program. If federal funds would not be renewed, the program was to terminate on August 31, 1986.

7. The NPP lost the general elections held in Puerto Rico on November 6, 1984, and the control of the Executive Branch of the Commonwealth Government, which it held for the previous eight years, to the PDP. Its candidate, Rafael Hernández Colón, had taken office as Governor on January 2, 1985.

8. In April, 1985, Agustín Boissen Bonilla, the Administrative Assistant to Chancellor Maldonado, executed a memo to Pedro Cruz Cruz, an officer in the UPR's Personnel Department regarding Dr. Chiriboga's status with the UPR. He requested the Personnel Department change the title of Dr. Chiriboga's administrative position from Director of the Center of Biomedical Sciences to Director of the Center and Researcher. Dr. Maldonado subsequently approved the change in name. This was an attempt to make Dr. Chiriboga's academic appointment retroactive to August 1, 1980, the date of the administrative appointment. This retroactive appointment was never confirmed by the Administrative Board, and plaintiff failed to establish that in fact it was effected.

9. Plaintiff continued to work after the October 18, 1985 dismissal in his academic positions until August 31, 1986, when federal funds for the pesticide program terminated. After that date, plaintiff no

longer worked for the UPR. He was not provided a contract termination hearing.

10. No Chancellor of the Medical Sciences Campus recommended plaintiff for tenure and the Administrative Board never extended tenure to plaintiff.

11. After he completed his academic research on August 31, 1986, Dr. Chiriboga claimed that he had become totally disabled and unable to work, and thereafter requested that an application for retirement be processed.

## II. CONCLUSIONS OF LAW

Plaintiff's complaint presents three claims: (1) that he was dismissed from his position as Director of the Center of Biomedical and Environmental Sciences, a tenured position, without a hearing, in violation of the Fifth Amendment due process rights; (2) that this dismissal was on account of his political affiliation, and (3) that as a result of filing the lawsuit in this Court on May 7, 1986, defendants dismissed him from his academic position as Investigator, in violation of his rights under the First Amendment. The plaintiff sues the defendants in their personal and official capacities. He seeks reinstatement into his former position, and damages against the defendants in their personal capacities.

At the close of the plaintiff's evidence, the court granted defendant's motion for directed verdict on the legal claim for damages. Similarly, the Court dismissed the plaintiff's retaliatory claim under the First Amendment. Plaintiff produced no evidence whatsoever to show that, as a result of filing the lawsuits, plaintiff was dismissed from his academic post. Finally, the Court dismissed the claim for injunctive relief, finding that reinstatement would cause undue hardship on the UPR.

### 1. *Denial of Due Process*

■ The due process clause of the Fourteenth Amendment guarantees public employees with a property interest in continued employment the right to some kind of hearing prior to being discharged. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The issue here is whether Dr. Chiriboga had a property interest in continued employment with the UPR. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 1491. Property rights to government employment may be created "not only by explicit contractual provisions, but also by an implied contract or officially sanctioned rules of the work place," *Cheveras Pacheco v. Rivera González*, 809 F.2d 125, 127 (1st Cir.1982), which include regulations of the UPR.

■ We look to the General Regulations of the University of Puerto Rico to determine whether Dr. Chiriboga had a property interest in that position. The thrust of plaintiff's case is that he was tenured in the position of Director of the Center of Biomedical and Environmental Sciences, as of August 1, 1985. We conclude that he had no tenure, and therefore had no expectation of continued employment. Section 50 of the General Regulations governs the appointment of tenure. Section 50.3 reads:

> Tenure for faculty shall be granted to those persons with an appointment on probation working full time, filling regular posts in the working budget of the University or in that of any of its institutional units or subunits and, who are judged by the competent authorities to have rendered satisfactory service for a period of five (5) years, all in accordance with the following sections.

The Administrative Board of each autonomous unit of the UPR, such as the Medical Sciences Campus, may grant or deny tenure to the academic personnel. However, under Section 50.5.4.1 of the Regulations, faculty members may not be granted tenure in administrative capacities.

> Members of the faculty to whom administrative functions or additional tasks have been assigned such as president of the University, chancellor, dean, department head, <u>director of an institutional unit,</u> division head, assistant to an executive officer and other analogous administrative posts, shall not be granted tenure

in the performance of such functions and additional tasks.

Section 50.5.4.1 (underline supplied). Members of faculty on probationary status assigned to administrative functions will receive a maximum of two years credit for their performance in their administrative capacities when computing the time necessary to obtain tenure in their regular teaching posts. Section 50.5.4. Furthermore, plaintiff was not in fact granted tenure as Director by the Administrative Board of the Medical Sciences Campus, nor had any chancellor of the Medical Sciences Campus recommended him for tenure.

Plaintiff also tried to establish a tenure right in the academic position, arguing that Dr. Maldonado had made his appointment as Investigator retroactive to August 1, 1980. Plaintiff argues that he had five years service in the academic post as of August 1, 1985, and thus was entitled to tenure. However, the plaintiff failed to establish the validity of this retroactive appointment. The proof of this appointment rested only in the memorandum circulated in the Personnel Office. The Administrative Board who made the appointment in July of 1983 was never presented with nor did it approve a request to make the appointment retroactive. Even if plaintiff had presented proof that a retroactive appointment was granted, this cannot be used to circumvent the formal procedure for granting tenure. The authority to grant tenure lies exclusively with the Administrative Board, *supra*. In addition, the circumstances are not those where time served in an administrative capacity can be credited towards tenure.

Furthermore, personnel at the UPR are classified as either teaching or non-teaching employees.[1] The non-teaching personnel are further classified into trust and career positions.[2] Trust employees include, among others, those who act as immediate advisors to the chancellors, and those who work directly under the chancellors when their positions involve a high degree of personal trust and confidence.[3] The trust employees are selected and removed at the will of the appointing authority.[4]

As Director of the Center of Biomedical and Environmental Sciences, a non-teaching position, Dr. Chiriboga occupied a position of trust, according to the UPR regulations. The position was created by Chancellor Maldonado, without the consultation of the relevant academic boards, and Dr. Chiriboga was appointed without going through a process of competition. Dr. Chiriboga worked under the direct supervision of the Chancellor. As a trust employee, under the applicable regulations, he was subject to removal by the Chancellor.

Since plaintiff did not enjoy tenure, he had no legitimate expectation of continued employment as Director of the Center of Biomedical and Environmental Sciences. He therefore had no property right to the position, and his claim for denial of due process fails. *Loudermill, supra; Board of Regents of State College v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir.1981); *Beitzell v. Jeffrey*, 643 F.2d 870, 874 (1st Cir.1981).

### 2. *Defense of Qualified Immunity*

 In actions brought under 42 U.S.C. § 1983, a qualified immunity from liability for damages is available to state executive officers performing discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The analysis as to whether the law was clearly established at the time of the conduct at issue requires a two step analysis: (1) whether the official's conduct violated a constitutional right that was clearly established at the time, and if so, (2) whether the official reasonably should have known that his acts violated a constitutional right. *De*

---

1. Section 100.32, UPR regulations.

2. Section 73.

3. Section 73.1.2.3; 73.1.2.5

4. Section 73.1.1

*Abadía v. Izquierdo,* 792 F.2d 1187 (1st Cir.1982). We find the defendants established a valid defense of qualified immunity in that it was not clearly established that Dr. Chiriboga had tenure, or a constitutionally recognized property interest in continued employment. For the reasons stated above, we find that, on the contrary, plaintiff did not have tenure as Director. Therefore, the decision to request plaintiff's resignation did not violate clearly established property rights of Dr. Chiriboga. We therefore need not reach the second step of the above analysis.

### 3. *Dismissal for Political Reasons*

■ Notwithstanding the conclusion that plaintiff had no property interest in continued employment in his position as Director, he still may not be terminated for political reasons. *Baez Cancel v. Mayor of the Municipality of Puerto Rico,* 100 P.R.R. 980 (1972). However, at trial, plaintiff presented insufficient evidence to establish that Dr. Saldaña dismissed him for political reasons, nor did he show that defendant Agrait had anything to do with the decision.

The evidence offered by the plaintiff, examined in the light most favorable to him, established that Chancellor Saldaña requested plaintiff's resignation as Director and that the resignation was accepted on October 21, 1985. In addition, the evidence also established that after he ceased performing the administrative duties as Director, the plaintiff continued to perform the academic duties for which he had been extended a conditional probationary appointment until August 31, 1986. Thereafter, plaintiff applied for retirement on account of an alleged total and permanent disability. Furthermore, the parties stipulated that plaintiff belongs to the NPP and that the defendants belong to the PDP. Finally, the plaintiff testified that in a con-

versation he had with President Agrait before the appointment of Chancellor Saldaña, President Agrait informed the plaintiff that he had to be aware that the government had changed as a result of the 1984 elections and that the positions in the UPR had to be filled with members of the PDP.[5]

The plaintiff presented no evidence, directly or indirectly, linking Chancellor Saldaña, the Appointing Authority in the Medical Sciences Campus, to any act of political discrimination against the plaintiff or anyone else. On the contrary, the plaintiff himself testified that he never had any conversation with Chancellor Saldaña regarding partisan politics. Moreover, Mr. Agustín Boissan, one of plaintiff's witnesses who had been for some years the Administrator of the School of Public Health under the supervision of then Dean Saldaña (now Chancellor Saldaña), testified that while he worked under Dr. Saldaña, the latter never discussed partisan politics with him.

The mere fact that the plaintiff and the defendants belong to different political parties is not of itself proof that defendants discriminated against plaintiff on account of his political affiliation. Furthermore, no evidence was offered of a conspiracy among the defendants to fire plaintiff because of political considerations. Such a leap between President Agrait's alleged conversation and plaintiff's dismissal from the administrative position would be little more than speculation.

### 4. *Request for Injunctive Relief*

■ The granting or denial of injunctive relief, as any other equitable relief, is subject to the Court's discretion. Such power, because of its very nature, should be exercised cautiously and the parties competing interests must be carefully balanced. Foremost in the decision to grant or deny

---

5. The Court does not give any credibility to plaintiff's testimony in this respect. However, that is not the issue. It is within the exclusive realm of the jury to determine the facts and to decide issues of credibility concerning the facts. It is the court's obligation however, to decide issues of law; including the determination of whether sufficient evidence was produced to let the jury decide the issues of fact. In this case, for the reasons expressed in this opinion, the Court decided that the evidence offered by the plaintiff was insufficient, as a matter of law, to let the jury make factual determinations.

an injunction is giving consideration to the hardship on the plaintiff if relief is denied or the hardship to the defendant if the relief requested is granted. Moreover, the potential conflict between the public interest and the private needs must be taken into account.

Plaintiff requested in the instant case that he be reinstated to the position of Director. For the reasons stated before, he had no such entitlement or property right. Moreover, the plaintiff did not establish that the demotions were politically motivated. In these circumstances, plainly, Dr. Chiriboga is not entitled to reinstatement.

■ Even if the plaintiff had been able to establish that he had a protected right and that the defendants improperly interfered with such legally protected right, he would still not be entitled to the injunctive relief because of the particular circumstances of this case. It must be remembered that plaintiff applied for retirement alleging that he had become totally and permanently disabled. Thus, the plaintiff is, by his own account, unable to work. In those circumstances, it would be completely inequitable to direct the University to re-employ a person that, by his own account, is disabled. The granting of such relief would be an abuse of discretion since the harm that would be caused to the public would far outweigh any benefit that plaintiff could receive. Therefore, the request for injunctive relief is DENIED.

In view of the foregoing, the Complaint is DISMISSED.

The Clerk shall enter Judgment accordingly.

IT IS SO ORDERED.