**Alaida CHINEA, Plaintiff,**

v.

**Margarita BENITEZ, et al., Defendants.**

**Civ. No. 88–0934 (JAF).**

United States District Court,
D. Puerto Rico.

Dec. 19, 1988.

Rafael González–Vélez, San Juan, P.R., for plaintiff.

Lady Alfonso de Cumpiano, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff Alaida Chinea formerly worked as a teacher and assistant professor at the University of Puerto Rico, Cayey University College ("C.U.C."). She filed this civil rights action under 42 U.S.C. section 1983 after not receiving tenure, alleging primarily that she was denied due process under the color of state law. Plaintiff's complaint also alleges that her denial of tenure was politically motivated in violation of her First Amendment rights to freedom of speech and association.

Both plaintiff and defendants have filed motions for summary judgment. As there are no genuine issues of material fact, Fed. R.Civ.P. 56(c), this court now grants judgment for the defendants.

### I.

The relevant facts of the case are as follows. Plaintiff was hired by C.U.C. in January 1983 for a teaching position in the Business Administration Department. At that time she held the rank of instructor and her appointment was on a probationary, five-year tenure track basis. She was promoted to the level of assistant professor in 1986, a rank she held until January of 1988. Throughout her appointment, Professor Chinea taught courses in human relations and fundamentals of administrative activity. In addition to her teaching duties, plaintiff served on various committees and held the positions of Personnel Director, Director of the Cooperative Education Program, and Interim Director of the Business Administration Department.

Pursuant to university regulations, plaintiff received an evaluation by the Personnel Departmental Committee ("Departmental Committee") for each of the years she was employed. In 1983, the Departmental Committee evaluated plaintiff's performance as "good" to "excellent" and unqualifiedly recommended that her contract be renewed. However, in 1984, 1985, and 1986, the Departmental Committee made comments to the effect that plaintiff's class was dull and monotonous and lacking in

critical analysis, and suggested that plaintiff be further evaluated by the Personnel Institutional Committee ("Faculty Committee"). Plaintiff was made aware of these criticisms and in more than one instance expressed her disagreement with them. In each of these years, the Faculty Committee gave plaintiff a satisfactory evaluation and she was duly reappointed.

In 1987, plaintiff completed her fifth year of tenure track employment at C.U.C. Again her evaluation included a comment concerning a lack of critical analysis, as well as a claim that plaintiff had only a "superficial knowledge of the matter she teaches." Nevertheless, her overall performance for that year was judged satisfactory and the Departmental Committee recommended that plaintiff be granted tenure "on condition that she begin studies in the field of Business Administration." However, the Faculty Committee, which in the scheme of the tenure granting process receives recommendations from the Departmental Committee and in turn submits its recommendation to the Administrative Board, decided that a conditioned recommendation for the granting of tenure was contrary to university regulations; therefore, the Faculty Committee requested the Departmental Committee to reevaluate plaintiff's candidacy. Upon reevaluation, the Departmental Committee *did not* recommend plaintiff for tenure. Neither, then, did the Faculty Committee. At this point, the Administrative Board agreed with the recommendation of not granting tenure, and plaintiff was so notified, in writing, on February 18, 1988.

The decision to deny tenure was apparently based in part on plaintiff's alleged lack of real and formal preparation in the area of business administration. Plaintiff came to her appointment at C.U.C. with a Bachelor of Arts degree and a Masters in Public Administration. Although she has no formal training in business administration, plaintiff points out that this was known to her superiors at the time she was hired and at the time she was promoted to the rank of assistant professor. It was only later in the tenure track process that plaintiff's formal qualifications became an issue. Nevertheless, defendants claim and plaintiff does not deny that during the 1986–87 academic year plaintiff met with the Departmental Committee to discuss her evaluations, admitted she had limitations in her knowledge of business administration, and agreed, at the suggestion of the Committee, that she would pursue studies in the matter. To this date plaintiff has apparently embarked upon no such course of study.

## II.

Plaintiff claims that in not receiving tenure she was denied due process under color of state law. In order to succeed in such an argument, plaintiff must first prove that she has a constitutionally protected property interest in continued employment. It is well established that a property interest does not arise from the Constitution, but rather that it is created and its limitations are defined by state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed. 2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Without a state-created property interest, plaintiff has no claim of constitutional violation and thus no section 1983 cause of action. *See Daley v. Town of New Durham,* 733 F.2d 4, 7 (1st Cir.1984).

▮ To decide whether plaintiff has a property interest, we are required to construe the General Regulations of the University of Puerto Rico ("Regulations"). Section 50.3, entitled "Who shall be granted tenure," states:

Tenure for faculty shall be granted to those persons with an appointment on probation working full time, filling regular posts in the working budget of the University or in that of any of its institutional units or subunits and, *who are judged by the competent authorities to have rendered satisfactory service for a period of five (5) years,* all in accordance with the following sections. (Emphasis supplied.)

Plaintiff contends that she achieved a property interest in being granted tenure because she has fulfilled the requirements

of Section 50.3. To this end she points out that her performance was judged "satisfactory" by a "competent authority" in yearly evaluations for each of the five years she served at C.U.C. In other words, plaintiff reads this section to mean that once a professor receives satisfactory yearly evaluations for five consecutive years, tenure is mandatory. The problem with plaintiff's argument, as we see it, is that it assumes the phrase "judged by competent authorities to have rendered satisfactory service for a period of five (5) years" refers exclusively to these yearly evaluations. The fact is, however, that there are other "evaluations" and other "competent authorities" involved in the tenure granting procedure. The General Regulations require the Departmental Committee and the Faculty Committee to make initial evaluations regarding teaching personnel,[1] after which the Administrative Board is required to make its own evaluation and issue a decision granting or denying tenure.[2] In the case at hand, each of these "competent authorities" judged that plaintiff's performance over the entirety of the five years was unsatisfactory. However, if plaintiff's reading of Section 50.3 is correct, then these later evaluations count for naught. This we simply cannot believe. Surely the bodies entrusted with the important function of making recommendations and decisions regarding tenure carry more than a rubber stamp with which to perform their assigned tasks.

Nevertheless, plaintiff emphasizes the mandatory language found in section 50.3 ("*shall* be granted") and claims that this language gave rise to an expectancy that tenure would be forthcoming. Again, however, she ignores the fact that the General Regulations provide that tenure "shall" be granted only after her performance over five years has been evaluated and found satisfactory by the Departmental Committee, the Faculty Committee, and the Administrative Board. Plaintiff was aware that she was up for evaluation by these entities and that, in spite of being reappointed from year to year, there were serious questions concerning her qualifications that might—and in fact did—make her reviewers disinclined to enter into what amounts to a lifelong contract with her. In such a case it is hard to see how plaintiff could entertain an expectancy of tenure that reaches constitutional significance. Moreover, even if plaintiff subjectively entertained an expectation of tenure, it is well established that she "must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). As discussed above, the General Regulation 50.3 provides plaintiff with no such entitlement.

■ Plaintiff also attempts to rely on Section 50.7 of the Regulations. This section, which is to be read in conjunction with section 50.3, states that a probationary employee may be terminated without receiving tenure "when so justified by the evaluation or evaluations made." It is apparently plaintiff's position that no evaluation justified her dismissal, and that absent "just cause" or "justification" she was entitled to tenure. But a similar argument was rejected by the First Circuit in *Lovelace v. Southeastern Massachusetts University,* 793 F.2d 419 (1st Cir.1986). In that case, the court *per curiam* found that "[r]ather than signifying a relinquishment of the university's normal discretion, that requirement [of "justification"], we think, simply proceduralized the information gathering process and served to facilitate the president in exercising his judgment and reaching a decision by ensuring that he would have the written opinions of relevant persons in the university hierarchy before him when he was ready to act." *Lovelace,*

---

1. Section 49.2 states:

   The direct evaluation of members of the teaching personnel shall be made by the departmental and faculty personnel committees, according to the norms established by the institutional units and approved by the University Board. Said norms must be in agreement with these Regulations.

2. Section 50.1 states: "After making the required evaluation, the Administrative Board of the corresponding unit shall, at the proposal of the chancellor, grant or deny tenure."

793 F.2d at 422. Here, the Regulations undeniably give the Administrative Board and its president the last word on plaintiff's candidacy. We agree with the court in *Lovelace* that by requiring some sort of justification for its decisions "a university does not thereby set objective crteria, constricting its traditional discretion or transforming a largely judgmental decisional process into an automatic right to, or property interest in, tenure." *Lovelace*, 793 F.2d at 422. *See also Beitzell v. Jeffrey*, 643 F.2d 870 (1st Cir.1981).

In one sense, it is easy to understand plaintiff's disappointment, or rather, disbelief, at not receiving tenure. After all, in spite of containing many critical observations, her yearly evaluations were deemed satisfactory enough to warrant her re-hiring for five consecutive years. However, we must note that a decision to extend a probationary contract an additional year, and one to grant lifelong tenure, are two entirely different things. Thus, problems noted in a professor's abilities that are deemed insufficient to warrant non-renewal of a yearly contract may, if they recur yearly with no sign of being remedied, take on greater significance when one is considering a lifelong relationship with the candidate. Although they are no model of clarity, the Regulations appear to grant to the Administrative Board the discretion needed to handle such a case. In this sense, "no inference favorable to [plaintiff] is to be drawn from [her] previous satisfactory, annually renewed probationary service." *Mayberry v. Dees*, 663 F.2d 502, 519 (4th Cir.1981), *cert. denied*, 459 U.S. 830, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982).

Plaintiff's argument in its barest form boils down to a claim that she had achieved *de facto* tenure similar to that recognized in *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). But in *Perry* there was no formal tenure granting process to delineate when someone did or

did not have a mutually recognized expectation of retaining government employment. As the First Circuit has established, "[i]n the absence of unusual circumstances, where a formal tenure system exists, that system confers no 'property' interest on probationary employees." *Beitzell v. Jeffrey*, 643 F.2d 870, 877 (1st Cir.1981); *see also Lovelace v. Southern Massachusetts University*, 793 F.2d 419, 423 (1st Cir. 1986). Here, the General Regulations provide for a formal tenure system that begins with the recruitment of personnel, continues with the evaluation of probationary employees, and ends with a final determination by the Administrative Board. Plaintiff has put forward nothing in the way of unusual circumstances sufficient to indicate the existence of *de facto* tenure, nor has she offered anything to establish a pattern indicating that probationary employees at C.U.C. are routinely awarded tenure after completing five years of service. Under this system, "[even] if plaintiff had presented proof [of five years of service], this cannot be used to circumvent the formal procedure for granting tenure" by accelerating the time when a property interest attaches. *Chiriboga v. Saldaña*, 660 F.Supp. 618, 622 (D.P.R.1987).

Plaintiff further claims that the Administrative Board acted contrary to the General Regulations in using plaintiff's lack of formal training in business administration as a factor in denying her tenure, and that for this reason the Board's decision was "arbitrary and capricious." Even assuming that plaintiff is correct that her formal training was an improper consideration, which we doubt,[3] we cannot say that defendants' action, based as it was on a variety of factors, was "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the*

---

3. Plaintiff was urged to take courses in business administration not as a mere formality but because her evaluations indicated a superficial knowledge in this area. Thus, it is not too much to assume that her lack of training in this area could fall under any number of the listed

"Evaluation Criteria" found in the General Regulations, namely under sections 49.3.2 ("Dedication to their work and to service to the University"), 49.3.1 ("Quality of teaching, research or publications"), 49.3.4 ("Professional Improvement"), and 49.3.11 ("Professional attitude").

*Univ. of Mich. v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985).

Finally, plaintiff alleges in passing that her denial of tenure was based in part on political motives in violation of her First Amendment rights. However, after examining all the papers in the light most favorable to plaintiff, as is required in the case of summary judgment, we can find nothing whatsoever to support this allegation and therefore consider it completely without merit.

In sum, we find that under the General Regulations plaintiff has not demonstrated that she has a constitutionally protected property interest, and, therefore, we need not address whether the process afforded to her was adequate. *See Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In light of the above, plaintiff's case under 42 U.S.C. section 1983 is hereby DISMISSED.[4]

IT IS SO ORDERED.

---

**4.** Here we note that plaintiff has pending before the University Board an administrative appeal of the decision to deny her tenure. Although the University Board may ultimately reverse that decision and reinstate plaintiff to her teaching post, this court heard this case because plaintiffs filing actions under section 1983 are not required to exhaust state administrative remedies. *See Patsy v. Board of Regents of State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, we emphasize that nothing in today's opinion is meant to in-

fluence the merits of plaintiff's case on appeal before the University Board. What was decided today, and all that was decided, is that plaintiff did not establish a constitutionally recognized entitlement sufficient to sustain a section 1983 cause of action. Whether the General Regulations of the University of Puerto Rico provide plaintiff with any other rights, short of constitutional significance, that may have been infringed by action taken by the defendants, was not addressed by the court and is, of course, a matter to be decided by the University Board.